## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:23-CV-00800

DANIEL COSTA, INDIVIDUALLY AND
ON BEHALF OF A CLASS OF ALL
PERSONS AND ENTITIES
SIMILARLY SITUATED,

                    Plaintiff,

      v.

CPI SECURITY SYSTEMS, INC.

                    Defendants.

**DEFENDANT CPI SECURITY
SYSTEMS, INC.'S ANSWER,
AFFIRMATIVE DEFENSES,
AND COUNTERCLAIMS**

1.      CPI admits that Paragraph 1 of the Complaint contains a recitation of a quotation from *Barr v. Am. Ass'n of Political Consultants,* 140 S. Ct. 2335, 2343 (2020).  Except as specifically admitted herein, all remaining allegations of Paragraph 1 of the Complaint are denied.

2.      The allegations of Paragraph 2 are denied.

3.      CPI admits that the Complaint appears to make allegations against CPI under the South Carolina Telephone Privacy Protection Act ("SCTPPA") and the Telephone Consumer Protection Act ("TCPA"), which CPI expressly denies. Except as specifically admitted herein, all remaining allegations of Paragraph 3 of the Complaint are denied.

4.      CPI is without sufficient information to either admit or deny the allegations of Paragraph 4.

5.      CPI is without sufficient information to either admit or deny the allegations of Paragraph 5.

6.      Admitted.

7.      The allegations of Paragraph 7 call for a legal conclusion, to which no response is required, but CPI does not intend to contest this Court's jurisdiction over this matter.

8.      The allegations of Paragraph 8 call for a legal conclusion, to which no response is required, but CPI does not intend to contest this Court's jurisdiction over CPI.

9.      CPI denies that it made the telemarketing calls at issue.   The remaining allegations of Paragraph 9 call for a legal conclusion, to which no response is required, but CPI does not intend to contest venue.

10.     CPI is without sufficient information to either admit or deny the allegations of Paragraph 10.

11.     The allegations of Paragraph 11 call for a legal conclusion, to which no response is required.  To the extent a response is deemed required, the allegations of Paragraph 11 as stated are denied.

12.     The allegations of Paragraph 12 call for a legal conclusion, to which no response is required.  To the extent a response is deemed required, the allegations of Paragraph 12 are denied.

13.     The allegations of Paragraph 13 call for a legal conclusion, to which no response is required.  To the extent a response is deemed required, the allegations of Paragraph 13 are denied.

14.     CPI admits that Paragraph 14 of the Complaint contains a recitation of a quotation from *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).  Except as specifically admitted herein, all remaining allegations of Paragraph 14 of the Complaint are denied.

15.     CPI is without sufficient information to either admit or deny the allegations of Paragraph 15.

16.     The allegations of Paragraph 16 call for a legal conclusion, to which no response is required.  To the extent a response is deemed required, the allegations of Paragraph 16 as stated are denied.

17.     The allegations of Paragraph 17 call for a legal conclusion, to which no response is required.  To the extent a response is deemed required, the allegations of Paragraph 17 as stated are denied.

18.     Admitted.

19.     Denied as stated.

20.     Denied.

21.     Denied.  The only call CPI has ever made to Plaintiff was made on May 1, 2023, and it was immediately following a telephone call Plaintiff initiated on May 1, 2023 that had been disconnected.  In the call Plaintiff initiated, he inquired about CPI's services and attempted to set up a customer account using fraudulent contact information.  When CPI attempted to confirm the fake name and address provided, Plaintiff hung up the phone.  A CPI customer sales representative

3

then promptly called Plaintiff back to finish setting up the customer account.  *See* Ex. 1 at ¶¶ 18-20.

22.     CPI is without sufficient information to either admit or deny the allegations of Paragraph 22.

23.     CPI is without sufficient information to either admit or deny the allegations of Paragraph 23.

24.     Denied.  The only call CPI has ever made to Plaintiff was made on May 1, 2023, and it was immediately following a telephone call Plaintiff initiated on May 1, 2023 that had been disconnected.  In the call Plaintiff initiated, he inquired about CPI's services and attempted to set up a customer account using fraudulent contact information.  When CPI attempted to confirm the fake name and address provided, Plaintiff hung up the phone.  A CPI customer sales representative then promptly called Plaintiff back to finish setting up the customer account.  *See* Ex. 1 at ¶¶ 20-21.

25.     CPI is without sufficient information to either admit or deny the allegations of Paragraph 25.

26.     Admitted.

27.     CPI did not make any outbound telephone call to Mr. Costa from a telephone number with an 803 area code, and in fact, did not call Mr. Costa on April 28, 2023.  The telephone number CPI used to call Mr. Costa on May 1, 2023 was 980-999-6600.  CPI is therefore without sufficient information to either admit or deny the allegations of Paragraph 27.

4

28.     CPI did not make any outbound telephone call to Mr. Costa from a telephone number with an 803 area code, and in fact, did not call Mr. Costa on April 28, 2023. The telephone number CPI used to call Mr. Costa on May 1, 2023 was 980-999-6600. CPI is therefore without sufficient information to either admit or deny the allegations of Paragraph 28.

29.     CPI did not make any outbound telephone call to Mr. Costa from a telephone number with an 803 area code, and in fact, did not call Mr. Costa on April 28, 2023. The telephone number CPI used to call Mr. Costa on May 1, 2023 was 980-999-6600. May 1, 2023 was the only time that CPI made an outbound telephone call to Mr. Costa. That telephone call was a call back from a live individual and did not include a "pre-recorded message." CPI therefore denies the allegations of Paragraph 29.

30.     CPI did not make any outbound telephone call to Mr. Costa from a telephone number with an 803 area code, and in fact, did not call Mr. Costa on April 28, 2023. The telephone number CPI used to call Mr. Costa on May 1, 2023 was 980-999-6600. May 1, 2023 was the only time that CPI made an outbound telephone call to Mr. Costa. That telephone call was a call back from a live individual and did not include a "pre-recorded message." CPI therefore denies the allegations of Paragraph 30.

31.     CPI did not make any outbound telephone call to Mr. Costa from a telephone number with an 803 area code, and in fact, did not call Mr. Costa on April 28, 2023. CPI is therefore without sufficient information to either admit or deny the allegations of Paragraph 31.

32.     Denied. CPI did not make any outbound telephone call to Mr. Costa from a telephone number with an 803 area code, and in fact, did not call Mr. Costa on April 28, 2023. The only call CPI has ever made to Plaintiff was made on May 1, 2023, and it was immediately

5

following a telephone call Plaintiff initiated on May 1, 2023 that had been disconnected. In the call Plaintiff initiated, he inquired about CPI's services and attempted to set up a customer account using fraudulent contact information. When CPI attempted to confirm the fake name and address provided, Plaintiff hung up the phone. A CPI customer sales representative then promptly called Plaintiff back to finish setting up the customer account. That call was not a pre-recorded telephone call.

33.     Denied. CPI did not make any outbound telephone call to Mr. Costa from a telephone number with an 803 area code, and in fact, did not call Mr. Costa on April 28, 2023. The only call CPI has ever made to Plaintiff was made on May 1, 2023, and it was immediately following a telephone call Plaintiff initiated on May 1, 2023 that had been disconnected. In the call Plaintiff initiated, he inquired about CPI's services and attempted to set up a customer account using fraudulent contact information. When CPI attempted to confirm the fake name and address provided, Plaintiff hung up the phone. A CPI customer sales representative then promptly called Plaintiff back to finish setting up the customer account. That call was not a pre-recorded telephone call.

34.     Denied as stated.

35.     Denied as stated. The 877-933-0193 phone number was not provided by CPI to Plaintiff during the May 1, 2023 call. The 877-933-0193 phone number is only used by CPI in Google Ads, where it is presented to potential customers in response to Google searches for generic terms such as those involving home security, or security systems, or home technology. *See* Ex. 1 at 16.

36.     CPI admits that 877-933-0193 is a phone number that, if dialed, will connect a potential customer to CPI Security. This phone number is utilized by CPI only in connection with Google Ads resulting from Google searches for generic terms such as those involving home security, or security systems, or home technology. *See* Ex. 1, at 16.

37.     CPI admits that after CPI had been served with the Complaint in this case, CPI became aware that one of the attorneys claiming to represent Plaintiff (though not undersigned counsel in this lawsuit) sent a letter addressed "CPI Security, ATTN: LEGAL DEPARTMENT" to 1706 Washington Ave., St. Louis, Missouri 63103. That address is not and has never been CPI's address. CPI does not and has never maintained any offices in the State of Missouri.

38.     Denied. Mr. Costa's attorney has been notified during telephone calls and in writing that CPI did not make the pre-recorded calls at issue. Despite the fact that CPI did not make these calls, Plaintiff has persisted with this lawsuit in violation of Federal Rule of Civil Procedure 11.

39.     Denied.

40.     The allegations of Paragraph 40 call for a legal conclusion, to which no response is required. To the extent a response is deemed required, the allegations of Paragraph 40 as stated are denied.

41.     Neither Plaintiff's claims nor a class action are proper here because CPI did not make a pre-recorded call to Plaintiff. The only call CPI has ever made to Plaintiff was made on May 1, 2023, and it was immediately following a telephone call Plaintiff initiated on May 1, 2023 that had been disconnected. In the call Plaintiff initiated, he inquired about CPI's services and

7

attempted to set up a customer account using fraudulent contact information. When CPI attempted to confirm the fake name and address provided, Plaintiff hung up the phone. A CPI customer sales representative then promptly called Plaintiff back to finish setting up the customer account. The allegations of Paragraph 41 are denied.

42. Neither Plaintiff's claims nor a class action are proper here because CPI did not make a pre-recorded call to Plaintiff. The only call CPI has ever made to Plaintiff was made on May 1, 2023, and it was immediately following a telephone call Plaintiff initiated on May 1, 2023 that had been disconnected. In the call Plaintiff initiated, he inquired about CPI's services and attempted to set up a customer account using fraudulent contact information. When CPI attempted to confirm the fake name and address provided, Plaintiff hung up the phone. A CPI customer sales representative then promptly called Plaintiff back to finish setting up the customer account. The allegations of Paragraph 42 are denied.

43. Denied. CPI did not make a pre-recorded call to Plaintiff. So, there is no class, there are no records of non-existent calls, and there are no class members to identify.

44. Denied.

45. Denied.

46. The allegations of Paragraph 46, including all its subparts, are denied.

47. Denied.

48. Denied.

49. Denied.

50.     Denied.

51.     Denied.

52.     It is admitted that there are no other lawsuits brought under the TCPA or SCTPPA against CPI. Except as specifically admitted herein, all remaining allegations of Paragraph 52 are denied.

53.     CPI incorporates all previous paragraphs of its answer as if fully set forth herein.

54.     Denied.

55.     Denied.

56.     Denied.

57.     Denied.

58.     CPI incorporates all previous paragraphs of its answer as if fully set forth herein.

59.     Denied.

60.     Denied.

All allegations in the WHEREFORE paragraph, including all subparts are denied.

9

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

CPI has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violations of the regulations prescribed under 47 U.S.C. § 227(b). Specifically, CPI has a written policy for handling do-not-call requests and maintaining an internal do-not-call list. Pursuant to the policy, CPI records and maintains recordings of all do-not-call requests. If a caller requests to be placed on CPI's do-not-call list, CPI will honor that request indefinitely and within 30 days as prescribed by law. CPI's policies and practices with regard to do-not-call requests satisfy the requirements set forth in 47 U.S.C. § 227(c)(5) and subsequent interpretations of that statute, and therefore operate as a complete affirmative defense to all claims against CPI in this lawsuit.

### Second Affirmative Defense

Pursuant to S.C. Code Ann. § 37-21-10, Plaintiff's claims under the SCTPPA are barred because CPI has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitation, including using a do not call list. Specifically, CPI has a written policy for handling do-not-call requests and maintaining an internal do-not-call list. Pursuant to the policy, CPI records and maintains recordings of all do-not-call requests. If a caller requests to be placed on CPI's do-not-call list, CPI will honor that request indefinitely and within 30 days as prescribed by law.

10

<u>Third Affirmative Defense</u>

The claims of Plaintiff and the proposed class are barred because Plaintiff and the proposed class members consented to being contacted by CPI.

<u>Fourth Affirmative Defense</u>

The alleged damages to Plaintiff and the proposed class members, if any, were caused by a third-party unrelated to CPI because CPI did not make the calls at issue in this case.  CPI does not authorize or engage with third parties to make such calls. *See* Ex. 1 at 13.

<u>Fifth Affirmative Defense</u>

Plaintiff's claims are barred because the only call CPI ever made to Plaintiff falls under the established business relationship exception set forth by 47 C.F.R. § 64.1200(f)(5).  This call was a live callback made by CPI to Plaintiff after the call Plaintiff initiated to inquire about purchasing CPI's services was disconnected.  This call cannot be a basis for liability because the call was made within three months of Plaintiff's call to CPI regarding products or services offered by CPI, and Plaintiff had not terminated his relationship with CPI.

<u>Sixth Affirmative Defense</u>

Plaintiff's claims are barred because the only call CPI ever made to Plaintiff falls under the established business relationship exception set forth by S.C. Code Ann. § 37-21-20.  This call was a live callback made by CPI to Plaintiff after the call Plaintiff initiated to inquire about purchasing CPI's services was disconnected.  This call cannot be a basis for liability because the call was made within three months of

Plaintiff's call to CPI regarding products or services offered by CPI, and Plaintiff had not terminated his relationship with CPI.

Seventh Affirmative Defense

The claims of Plaintiff and the proposed class are barred by the doctrine of unclean hands because Plaintiff provided fraudulent contact information and attempted to set up a fraudulent customer account, which constituted fraud and negligent misrepresentation.

**COUNTERCLAIMS**

COMES NOW CPI and brings the following counterclaims against Plaintiff.

**The Parties**

1. CPI is a family owned company headquartered in Charlotte, North Carolina.

2. In the last two years, Plaintiff has filed no fewer than six TCPA lawsuits in federal courts across the country, all of which were proposed class actions (and in at least one other of which, he was represented by same counsel as in this matter).

**CPI's Business**

3. CPI provides security alarm services, alarm monitoring, and smart home technology to households and businesses in the southeast.

4. CPI markets its services on its website, through television advertisements, with community sponsorships, and through leads generated from its website.

5.  To generate a lead on CPI's website, a potential customer must fill out the online form depicted below, requesting a quote.  To submit the form, a potential customer must agree to be contacted even if he or she is on a Do Not Call List.

## Call (844) 648-8889
to claim this limited time offer

First Name                          Last Name

Email

Phone

Zip Code

**Do you own or rent?**

○ Own      ○ Rent

**Start Your Quote**      Existing customer? Click here.

By submitting this form, I agree to be contacted by CPI even if I'm on a Do Not Call List. I agree to this contact from CPI by email, phone call, or text message at my contact information provided above. I understand that this contact may be generated by an automated technology such as an automated phone dialing system and may use prerecorded voice or messaging. I understand that my agreement to the foregoing is not a condition to purchase any products or services from CPI.

6.  After a potential customer fills out the online form, a CPI customer sales representative will contact the potential customer using the information provided by the potential customer.

7.  CPI customer sales representatives also monitor CPI's telephone line for potential customers who call in to inquire about CPI's services.

13

8. On May 1, 2023, Plaintiff called CPI on its customer service phone line, and one of CPI's customer sales representatives, Andy Harnen, answered the phone. *See* Ex. 1 at ¶¶18-19.

9. While speaking with Andy, Plaintiff feigned interest in CPI's security alarm services.

10. Andy asked Plaintiff for his name, telephone number, and the address for which he was interested in security services. *Id.*

11. Plaintiff knowingly and with the intent to deceive provided Andy with the false name "John Manner." *Id.* at ¶ 18.

12. John Manner is not Plaintiff's name.

13. Plaintiff knowingly and with the intent to deceive provided Andy with two fictitious addresses: 501 Hudson Street, Cayce, South Carolina and 501 Hudson Avenue, Cayce, South Carolina. *Id.* When Andy pushed further to verify the address, Plaintiff hung up the phone.

14. Neither of these addresses are Plaintiff's address.

15. According to the Lexington County, South Carolina register of deeds, neither of these addresses actually exist.

16. Andy attempted to call Plaintiff back shortly after the disconnected call, but Plaintiff did not answer the call. *Id.* at ¶ 21.

17. Andy left a voicemail for Plaintiff explaining that he would be happy to help finish setting up Plaintiff's account and left a call back number of 877-240-2145. *Id.*

14

18. The same day, May 1, 2023, Plaintiff called CPI again. This time, he spoke with a customer sales representative named Melissa Pagano. *Id*. at ¶ 22.

19. Plaintiff again provided a false name, telling Melissa his name was John Manner. *Id*.

20. Plaintiff demanded to speak with "Alex in the processing center of hometechnology.com." *Id*.

21. CPI is not and has never been affiliated in any way with hometechnology.com. *Id*. at ¶ 23.

22. Melissa, the CPI customer sales representative, did not know of or have any record of who "Alex in the processing center of hometechnology.com" was. *Id*. at ¶ 22.

23. Melissa then explained to Plaintiff that she had CPI's upper management pull every call log from the entire call center to see anyone Plaintiff had spoken with, and the records clearly indicated that Plaintiff had only spoken with Melissa and Andy on May 1, 2023. *Id*.

24. Plaintiff then told Melissa that he got a call from 803-820-0295, and he was then connected to "Alex in the processing center," who directed him to "hometechnologies.com." *Id*.

25. CPI does not and has never had any affiliation with the phone number 803-820-0295. *Id*. at ¶ 11.

26. CPI does not and has never had any affiliation with hometechnologies.com. *Id*. at ¶ 23.

15

27. Upon information and belief, the number Plaintiff listed in his Complaint - 877-933-0193 – was obtained when Plaintiff performed a Google search for "home technology" or "home technologies" as he described in his call with Melissa on May 1, 2023. This number is only affiliated with Google Ads, which has been set up to provide this number as a contact number for potential customers to CPI following Google searches (among others) for generic terms that relate to the home security and home automation services CPI provides. *Id.* at ¶ 16.

## COUNT ONE
### FRAUD

28. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

29. When Plaintiff called CPI on May 1, 2023 and spoke to customer sales representatives Andy and Melissa, he made multiple false representations, providing a false name and two false addresses.

30. The false name Plaintiff provided was John Manner. *Id.* at ¶¶ 18, 22.

31. The two false addresses Plaintiff provided were 501 Hudson Street, Cayce, South Carolina and 501 Hudson Avenue, Cayce, South Carolina. *Id.*

32. Plaintiff intended to deceive CPI into believing the false name and addresses he provided were in fact, his name and address, and that he had an interest in purchasing CPI's security services.

33. Plaintiff's false statements were reasonably calculated to deceive CPI because CPI has to rely on its potential customers to provide truthful information when they call in claiming they are interested in purchasing CPI's security services.

34. CPI was, in fact deceived into believing that Plaintiff's name was John Manner and that his address was either 501 Hudson Street, Cayce, South Carolina or 501 Hudson Avenue, Cayce, South Carolina, and that he had interest in purchasing CPI's security services, which is evidenced by Andy's attempt to call Plaintiff back to finish setting up his customer account. *Id.* at ¶ 21.

35. CPI would not have spent time and resources on Plaintiff had it known that Plaintiff was contacting CPI to perpetuate his own business as a serial TCPA plaintiff, that his name and address were fictitious, or that he was not actually interested in buying CPI's security services. CPI was damaged by Plaintiff's deceptive conduct, including but not limited to the loss of potential customers who would have otherwise been assisted by CPI customer sales representatives Andy and Melissa while Plaintiff was defrauding them, lost revenue, and lost employee time spent attempting to help clarify Plaintiff's situation and set up what Plaintiff knew was a fraudulent account.

## COUNT TWO

## NEGLIGENT MISREPRESENTATION

36. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

37. When Plaintiff called CPI on May 1, 2023 and spoke to customer sales representatives Andy and Melissa, he made multiple false representations, providing a false name and two false addresses, and feigning interest in purchasing CPI's security services.

38. The false name Plaintiff provided was John Manner. *Id*. at ¶ 18.

39. The two false addresses Plaintiff provided were 501 Hudson Street, Cayce, South Carolina and 501 Hudson Avenue, Cayce, South Carolina. *Id*.

40. Plaintiff failed to exercise reasonable care when he provided a false name and false addresses, and when he feigned interest in CPI's security services, to CPI's customer sales representatives.

41. Plaintiff owed CPI a duty of reasonable care to provide accurate personal information and to otherwise be truthful in his interactions (including his interest in calling) when setting up a customer profile with CPI's customer sales representatives.

42. CPI justifiably relied on the false name and false addresses Plaintiff provided, and in Plaintiff's feigned interest in purchasing CPI's security services, because CPI has to rely on its potential customers to provide truthful information when they call in claiming they are interested in setting up an account for alarm services.

43. CPI relied on the false name and false addresses Plaintiff provided to its detriment and was damaged by Plaintiff's deceptive conduct, including but not limited to the loss of potential customers who would have otherwise been

18

assisted by CPI customer sales representatives Andy and Melissa while Plaintiff was defrauding them, lost revenue, and lost employee time spent attempting to set up what Plaintiff knew was a fraudulent account.

WHEREFORE, CPI prays for the following:

1. Trial by jury.

2. Judgment in favor of CPI and against Plaintiff on all counterclaims.

3. Punitive damages in an amount to be determined at trial.

4. Dismissal of all Plaintiff's claims with prejudice.

5. All other relief that is just and proper.

Dated: December 18, 2023   Respectfully submitted,

           **SHOOK, HARDY & BACON L.L.P.**

       By: <u>s/ *Caroline M. Gieser*</u>
         Caroline M. Gieser
         North Carolina Bar No. 51610
         cgieser@shb.com
         1230 Peachtree Street, Suite 1200
         Atlanta, Georgia 30309
         (470) 867-6013

          -and-

         Charles C. Eblen
         (*Pro Hac Vice forthcoming*)
         ceblen@shb.com
         Jason R. Scott
         (*Pro Hac Vice forthcoming*)
         jscott@shb.com
         2555 Grand Blvd.
         Kansas City, Missouri 64108-2613
         (816) 474-6550

*Counsel for Defendant CPI Security Systems, Inc.*

## CERTIFICATE OF SERVICE

I certify that on the 18th day of December, 2023, I served the foregoing document by ECF on all counsel of record.

/s/ Caroline M. Gieser
Caroline M. Gieser

**Counsel for Defendant CPI Security Systems, Inc.**